IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LORELL AUGUSTINE JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 07 C 4646 |
| v. | ) | |
| | ) | Hon. George W. Lindberg |
| CITY OF CHICAGO, VANCE HENRY, | ) | |
| and BETH FORD, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is defendants City of Chicago ("City"), Vance Henry ("Henry") and Beth Ford's ("Ford") (collectively "defendants") joint motion for summary judgment. On February 8, 2008, plaintiff Lorell Jones ("Jones" or "plaintiff") filed a five-count Second Amended Complaint ("complaint"). In the complaint, Jones alleges a Title VII gender discrimination claim (Count I), hostile work environment claim (Count II) and a claim for a violation of the Family Medical Leave Act ("FMLA") (Count V), 29 U.S.C. § 2601, et seq., against the City. Jones alleges a claim for race discrimination in violation of 42 U.S.C. § 1981 (Count III) against Henry and Ford and a claim for gender discrimination and harassment in violation of 42 U.S.C. § 1983 (Count IV) against Henry. Defendants move for summary judgment in their favor and against plaintiff as to the complaint in its entirety.

In her response to defendants' motion for summary judgment, Jones concedes that there is insufficient evidence to support her claim for a violation of § 1981. Therefore, judgment is entered in favor of defendants Henry and Ford as to Count III of the complaint. Now, the Court

turns to the remaining four claims.[1]

## I. Relevant Facts

The following facts are undisputed unless specifically noted below. Jones is an African-American female who was employed by the City as a Community Organizer in the Chicago Alternative Policing Strategy Implementation Office ("CAPS" or "CAPS Implementation Office") from October 9, 2001 until her discharge on June 28, 2006. The City discharged Jones for job abandonment because she did not report to work on June 20, 2006 through June 24, 2006. CAPS is a subdivision of the Chicago Police Department. While a CAPS Community Organizer, Jones was a member of the American Federation of State, County, and Municipal Employees Counsel 31 Union ("AFSCME"). The collective bargaining agreement between AFSCME and the City governed the terms and conditions of Jones' employment.

For all times relevant to this case, Henry, an African-American male, was the Director of the CAPS Implementation Office and Ford, a Caucasian female, was the Deputy Director of the CAPS Implementation Office. Henry was the decision maker with regard to the termination of Jones' employment with the City. On July 25, 2006, Jones filed a charge of gender discrimination with the Equal Employment Opportunity Commission ("EEOC"). She received a right to sue letter on May 17, 2007 and thereafter filed a timely complaint in this case.

On or about May 9, 2006, Jones booked a trip to Jamaica. Plaintiff left for her trip on

---

[1] Plaintiff requested and was granted leave to file a sur-reply in opposition to defendants' motion for summary judgment. The Court considered the arguments in that brief as well as each of the previously filed briefs. In the order granting plaintiff leave to file a sur-reply, the Court instructed plaintiff to address, among other things, the timeliness of her allegations related the hostile work environment claim and whether her neck pain constituted a "serious health condition" under the FMLA. *See* 29 U.S.C. § 26611(11). Plaintiff failed to address either issue in her sur-reply and waived all arguments related to those issues.

June 18, 2006 and returned on June 25, 2006. According to Jones, the purpose of the trip was for a "detox and get away." On May 17, 2006, at a CAPS Implementation Office staff meeting, an announcement was made that no requests for vacation would be approved until after June 24, 2006 because of the office's upcoming Spring Neighborhood Assembly on June 24, 2006. Mayor Richard Daley was scheduled to and did attend the Assembly and all CAPS Community Organizers – including Jones – were expected to attend.

The next day, May 18, 2006, Jones submitted an "Overtime/Compensatory Time Report" form to John Reynolds, her direct supervisor. Jones requested two days of compensatory time off and one vacation day so that she could take the trip to Jamaica. Jones' request for compensatory time off and vacation time was not approved because of the upcoming Spring Neighborhood Assembly. A couple weeks later, on June 7, 2006, plaintiff went to see Dr. Zack Zoldan. At the appointment, plaintiff complained of neck pain and Dr. Zoldan performed a physical examination.

Jones received a note dated June 8, 2006 and entitled, "Health Status Certificate", from Dr. Zoldan's office. Dr. Zoldan did not fill in the note, he merely stamped his signature on it. The note stated, "Miss Jones, Lorell has been/is under my care from 6/19/06 to 7/5/06 and is/is not able to return to school/work 7/6/06." Next to the word "Restrictions" on the note, the box next to "None" is checked. Next to the word "Diagnosis" it says "Neck Pain." Prior to June 7, 2008, Jones' last appointment with Dr. Zoldan was August 24, 2005. After June 7, 2008, Jones did not return to Dr. Zoldan for a follow-up appointment, or a subsequent visit. Dr. Zoldan did not prescribe the trip to Jamaica, or any of the activities that Jones participated in during her trip. In fact, Dr. Zoldan would "not necessarily" have given Jones the note if he had known about her

trip because "it would have seemed strange."

According to Jones, on June 10, 2006, she went into Reynold's office when he was not there and placed the note from Dr. Zoldan on Reynold's desk in a stacked file system. Reynolds did not read the note in Jones' presence, but Jones told him what the note said. Jones also told Reynolds that she would return to work on June 28, 2006 even though the note stated that she would be off work until July 6, 2006. After receiving the note from Dr. Zoldan on June 8, 2006, Jones continued to work until June 17, 2008 and physically felt the same on June 8, 2006 as she did on June 18, 2006. Jones did not seek any medical treatment while in Jamaica. However, she did take a four-hour water rafting trip and walked extensively. When Jones left for her trip to Jamaica she believed the City had approved the time off for her trip as medical leave.

## II. Legal Analysis

### A. Summary Judgment Standard

To succeed on a motion for summary judgment, the moving party must show that the pleadings, depositions, answers to interrogatories, and admissions on file, together with any admissible affidavits do not create a genuine issue of material fact and that it is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must construe all facts in the light most favorable to the non-moving party, Jones, and must view all reasonable inferences in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### B. Gender Discrimination Claims

Jones alleges gender discrimination claims against the City and Henry. Jones claims the City discriminated against her based on her gender in violation of Title VII and Henry

4

discriminated against her in violation of Section 1983. Both discrimination claims are analyzed in the same way and the same standard of liability applies to both claims. *Burks v. Wis. Dept. of Transp.*, 464 F.3d 744, 750 n.2 (7th Cir. 2006).

Jones claims that she has direct proof of gender discrimination. Direct evidence of discrimination would amount to an admission by the City or Henry that Jones was terminated on the basis of her gender. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006). Contrary to plaintiff's assertion, there is no direct evidence of gender discrimination in the record before the Court. Jones also claims that there is circumstantial evidence of discrimination. In support of that claim, Jones cites comments Henry made between August 2004 and August 2005. The remarks Jones cites can only provide an inference of discrimination if they were: (1) made by the decision maker; (2) around the time of the decision; and (3) in reference to the adverse employment action. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007). Comments made almost a year before the adverse employment action do not constitute evidence of discrimination under the direct method. *Id. See also Petts v. Rockledge Furniture, L.L.C.*, 534 F.3d 715, 721 (7th Cir. 2008). Henry's comments occurred ten to twenty-eight months before Jones' termination in June 2006. Accordingly, Henry's comments were not made around the time of the decision to terminate Jones and are not direct evidence that Jones' termination was a result of gender discrimination.

Jones also cites other purported circumstantial evidence of discrimination that she claims, when considered with Henry's statements, create a convincing mosaic of discrimination against plaintiff. *See Troupe v. May Dept. Stores, Co.*, 20 F.3d 734, 737 (7th Cir. 1994). The other evidence is related to disciplinary action taken by the City against three other CAPS

5

Implementation Office employees – Beth Ford, Glen Brooks ("Brooks"), and Reynaldo Kyles ("Kyles"). The Court disregards all allegations related to Kyles because they lack foundation and would not be admissible at trial.[2] *See Caulfield & Associates, Inc. v. Litho Productions, Inc.*, 155 F.3d 883, 888 (7th Cir. 1998); *see also McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). Jones admits that she never spoke to Kyles about his disciplinary history and never saw his disciplinary files.

Ford (female) and Brooks (male) were both suspended from work for being involved in traffic accidents while driving City vehicles. Brooks crashed a City vehicle while off duty and under the influence of alcohol. Ford failed to report to the City that she was involved in a traffic accident while driving a City vehicle without a valid driver's license. In connection with those incidents, the City suspended Brooks for 30 days and suspended Ford for 56 days, but did not terminate their employment. According to Jones, crashing a City vehicle is a far more serious offense than five consecutive absences from work. Without citing to any relevant case law, Jones asserts being fired for what she considers a minor offense – five consecutive absences – while two other employees were merely suspended for what she considers far more serious offenses – traffic accidents – is circumstantial evidence of discrimination. Involvement in a traffic accident is not similar to five consecutive absences, and, on these facts, there is no rational inference of discriminatory animus. Accordingly, Jones cannot defeat summary judgment under the direct method.

Next, the court turns to the indirect method of analyzing a gender discrimination claim.

---

[2]In her sur-reply, Jones does not address or rebut defendants' arguments related to the inadmissibility of allegations about Kyles.

In order to establish a prima facie case of gender discrimination under the indirect method, Jones must present evidence that: (1) she was a member of a protected class; (2) she was performing at a level that met her employer's legitimate expectations; (3) she was subject to an adverse employment action; and (4) she was treated differently than similarly situated persons outside of her protected class. *Rhodes v. Illinois DOT*, 359 F.3d 498, 504 (7th Cir. 2004). There is no question that Jones is a member of a protected class and that she suffered an adverse employment action. However, there are no facts in the record that suggest the City treated Jones differently than other similarly situated male employees.

Jones claims that she was similarly situated to Brooks and Kyles. As stated above, the Court will not consider any allegations related to Kyles because they lack foundation and would not be admissible at trial. As for Brooks, he is not similarly situated to Jones. In order to be considered similarly situated, Jones and Brooks must be similarly situated with respect to performance, qualifications and conduct. *Snipes v. Illinois Dept. of Corrections*, 291 F.3d 460, 463 (7th Cir. 2002). In other words, the record must reflect that "the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id*. (*quoting Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000)). Crashing a City vehicle is not similar conduct to five consecutive absences from work. Thus, Brooks and Jones are not similarly situated employees for purposes of the indirect burden shifting test. Further, Jones does not cite any other admissible evidence related to other allegedly similarly situated employees. Therefore, Jones has failed to present sufficient facts to establish that she was treated differently than a similarly situated male and summary

judgment is entered in favor of the City as to Count I and in favor of Henry as to Count IV.

### C. Remaining Claims against the City

#### 1. Violation of the FMLA

Plaintiff claims that the City violated her rights under the FMLA because it did not construe a certification from her treating physician as to request for leave under the FMLA. Plaintiff concedes that she never specifically asked the City for leave under the FMLA. "When an employee alleges a deprivation of the substantive guarantees of the FMLA, the employee must establish, by a preponderance of the evidence, an entitlement to the disputed leave." *Darst v. Interstate Brands, Corp.*, 512 F.3d 903, 908 (7th Cir. 2008).

To prevail on her FMLA interference claim, Jones must establish: (1) she was eligible for FMLA protection; (2) the City was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she provided the City with sufficient notice of her intent to take FMLA leave; and (5) she was denied FMLA benefits to which she was entitled. *Caskey v. Colgate-Palmolive, Co.*, 535 F.3d 585, 590 (7th Cir. 2008).

An employee may be entitled to leave under the FMLA "because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Jones has not identified any serious health condition that prevented her from performing her job as a CAPS Community Organizer.

"A serious health condition is defined as an illness, injury, impairment, or physical or mental condition that involves either (1) inpatient care in a hospital, hospice, or residential facility; or (2) continuing treatment by a healthcare provider." *Darst*, 512 F.3d at 908 (citing 29 U.S.C. § 2611(11)). The FMLA regulations define "continuing treatment by a health care

provider as including (1) a period of incapacity of more than three consecutive calendar days that also involves either treatment two or more times by a health care provider or a regimen of continuing treatment; or (2) any period of incapacity due to a chronic serious health condition, which requires periodic treatment by a health care provider." *Caskey*, 535 F.3d at 591-92 (citing 29 C.F.R. § 825.114(a)(2)(I)).

Jones did not receive any inpatient care in June 2006. Therefore, the only question is whether Jones' condition involved continuing treatment by a healthcare provider. Jones saw Dr. Zoldan for an isolated visit on June 7, 2006. Prior to June, the last time Jones saw Dr. Zoldan was August 25, 2005 and Jones did not see Dr. Zoldan again after the June 7, 2006, visit. Jones also did not engage in a "regimen of continuing treatment" between June 18, 2006 and June 25, 2008. Jones was on a trip to Jamaica and was not participating in physical therapy. Dr. Zoldan's note also did not indicate that Jones was suffering from a chronic health condition. It merely indicated "neck pain," a diagnosis that Dr. Zoldan admitted was based on Jones' self report. In the complaint, Jones alleges she suffers from rheumatoid arthritis, but does not reference arthritis anywhere in her Local Rule 56.1(b) statement of additional facts. The Court, as is its right, will not scour the record to determine if plaintiff had any basis for requesting sick leave. *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995). On these undisputed facts, there is no evidence to support Jones' claim that she was entitled to leave under the FMLA. Therefore, judgment is entered in the City's favor as to Count V.

*2. Hostile Work Environment*

Next, the Court turns to Jones' hostile work environment claim against the City. In order to establish a hostile work environment claim, Jones must present evidence that: (1) she was

subject to unwelcome harassment; (2) the harassment was based on her gender; (3) the harassment was severe or pervasive so as to alter the conditions of her work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability. *Smith v. Northeastern Illinois University*, 388 F.3d 559, 566 (7th Cir. 2004).

Jones' claim that Henry's verbal comments created a hostile work environment is time barred. *See Allen v. American Signature, Inc.*, 272 Fed.Appx. 507, 510 (7th Cir. Mar. 31, 2008). The relevant comments from Henry occurred in August 2004, February 2005, March or April 2005 and at a staff meeting in August 2005. Jones' claim related to the June 2004 job posting for an open Area Coordinator position within the CAPS Implementation Office is also time barred. Jones was required to submit a claim to the EEOC within 300 days of the allegedly offending conduct. *Id*. Jones filed her complaint with the EEOC on July 25, 2006. Because Henry's verbal comments occurred before September 28, 2005, they are time barred and cannot serve as the basis for a hostile work environment claim. *Id*. The issues related to the Area Coordinator position also occurred before September 2005 and are also untimely.

Finally, Jones cites to the denial of paid time off to attend two non-City sponsored conferences in 2006 in support for her hostile work environment claim. During 2006, Jones requested paid time off to attend what she characterized as two extracurricular learning activities. The first conference was a two-day event at the University of Illinois at Urbana-Champaign for urban planners. Jones wanted to attend that event to learn new tips on land use, development, transportation studies and things of that nature. The second activity was a Women of Power Conference in Arizona. According to Jones, that conference helped women become more proactive and grow in the workplace. Jones attended both conferences, but had to either use

10

vacation time or unpaid leave to account for her time away from work. Jones claims that the City's failure to pay her for the time she took off to attend those conferences created a hostile work environment. Jones' contention lacks merit. Denial of paid time off to attend non-City sponsored conferences does not, either objectively or subjectively, constitute hostile or abusive conduct. *See Haugerud v. Amery School Dist.*, 259 F.3d 678, 692-93 (7th Cir. 2001). Therefore, judgment is entered in favor of the City and against Jones as to Count II.

### *III. Conclusion*

For the reasons set forth above, defendants' motion for summary judgment is granted. Judgment is entered in favor of all defendants and against plaintiff as to the complaint in its entirety.

**ORDERED**: Judgment is entered in favor of defendants Vance Henry and Beth Ford as to Count III of the Second Amended Complaint. Judgment is entered in favor of the City of Chicago as to Counts I, II and V of the Second Amended Complaint. Judgment is entered in favor of Vance Henry as to Count IV of the Second Amended Complaint.

E N T E R:

_George W. Lindberg_
SENIOR U.S. DISTRICT JUDGE

DATED: December 4, 2008